## A. MICHAEL HOOKE, SR. ET AL. v. EQUITABLE CREDIT CORPORATION

[No. 26, September Term, 1976.]

*Decided November 3, 1976.*

The cause was argued before DAVIDSON, MELVIN and LISS, JJ.

*Benjamin Swogell* for appellants.

*Jay I. Morstein*, with whom was *Lawrence F. Rodowsky* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

This is an appeal by A. Michael Hooke and Marguerite E. Hooke, Trustees, from an order of the Superior Court of

Baltimore City denying their motion to strike a judgment by confession against them in the sum of $152,565.69, plus attorney's fees of $22,600.00 and costs.

On October 25, 1973, the appellee, Equitable Credit Corporation (Equitable) loaned $100,000 to two Maryland corporations, Holly Lane Apartments, Inc. and A. Michael Hooke and Sons, Inc. The loan was evidenced by a confessed judgment note signed on behalf of the two corporations by A. Michael Hooke and Marguerite E. Hooke in their respective capacities as president and secretary of each corporation. The Hookes also signed the note in their individual capacities as guarantors. The note contained a provision that the Hookes' liability as guarantors was "joint, several and unconditional with HOLDER having the express right to proceed against ... [them] ... without first proceeding against makers."

On March 14, 1974, Equitable loaned $50,000 to "A. Michael Hooke, Sr. and Marguerite E. Hooke, Trustees, under a certain Deed of Trust [1] dated May 1, 1972, and recorded on May 12, 1972 among the Land Records of Baltimore County, in Liber O.T.G. 5267, at Folio 391." This loan was also evidenced by a confessed judgment note, signed by the Hookes *as trustees* and, in their individual capacities, as guarantors. This note also provided that their liability as guarantors was "primary and not secondary". Thus, upon default of the first note (hereinafter termed "corporate note") Equitable had the option of proceeding directly against any one of the corporate makers and individual guarantors, against all of them, or any combination of them. Upon default of the second note (hereinafter termed "trustee note") Equitable had the option of proceeding against the Hookes either in their capacities as trustees or in their individual capacities, or in both capacities.

Both notes being in default, Equitable, on November 21, 1974, filed a declaration in the Superior Court of Baltimore

---

**1.** Under the trust instrument, the Hookes as trustees held fee simple title to a 72.5 acre tract of land in Baltimore County for the benefit of three minor children.

City against "A. Michael Hooke, Sr. and Marguerite E. Hooke . . . , *Trustees* under that Certain Deed of Trust dated May 1, 1972, and recorded among the Land Records of Baltimore County in Liber O.T.G. 5267 at Folio 391 . . . . " No other party was named as a defendant in the action.

The declaration alleged the non-payment of the corporate note in the amount of $101,562.50 and a counsel fee of $15,000, and the non-payment of the trustee note in the amount of $51,003.46 and a counsel fee of $7,500.00. Both notes were filed with the declaration together with an affidavit stating the combined amount due on the notes to be $152,565.96. Also filed with the declaration was the entrance of the appearance of an attorney "for the defendants" and a direction to the clerk to "enter a Judgment by Confession for the Plaintiff" for the sum of $152,565.96 with interest, costs of suit and attorney's fees of $22,600.00 [2] "*as provided* in said note." (Emphasis added). The clerk entered the judgment as directed and issued a summons to "A. Michael Hooke, Sr. and Marguerite E. Hooke" to appear " . . . within 30 days after service of this notice upon them and show cause, if any they may have, why the judgment of Confession entered against *them* . . . for $152,565.96, interest, and attorney's fee of $22,600.00 and costs, should be vacated, opened or modified." (Emphasis added) The summons further stated, "If no such cause be shown within thirty days said judgment will be deemed to be final to the same extent as a judgment entered after trial." The summons was served on the Hookes on November 30, 1974. Maryland Rule 645 c provides that if no application is made to vacate, open, or modify a judgment by confession within 30 days after service of a summons upon the defendants, "the judgment shall stand to the same extent as a judgment absolute entered after trial."

On May 26, 1975, the Hookes, in their capacities as trustees, petitioned the court to strike the judgment "or in

---

[2]. We observe that the claimed attorney's fee of $15,000 on the corporate note, plus the $7,500 fee claimed on the trustee note, equal $22,500, not $22,600.

the alternative to modify" it. Their "Amended Motion to Strike Judgment", filed October 27, 1975, alleged that the $152,565.96 (plus a $22,600.00 attorney fee) judgment had been obtained against them "as Trustees" on two confessed judgment notes; that the corporate note was not executed by the trustees and the trustees were "in no way responsible for its payment"; that "the Plaintiff and its attorney knew that the said Trustees were not responsible for the $100,000.00 note but joined that note with the Trustees' note in order to confuse and deceive the court and thereby have a judgment on both notes rendered against them as Trustees"; that "the said judgment was entered by the court by mistake because of the fraud practiced upon it by the Plaintiff"; and that *"the notice of the judgment served on your Petitioners did not disclose that it was against them as Trustees so that they were unaware of the judgment against the Trust Estate and had no opportunity to file a motion to strike."* (Emphasis added) After a hearing, the court below denied the motion. It is from that ruling that the Hookes have appealed.

It is clear under Rule 645 that a defendant in a confessed judgment action is entitled to move to vacate, open or modify the judgment within 30 days after service of a "summons *for the defendant* notifying him of the entry of the judgment." (Emphasis added) The defendants in the instant proceedings are "A. Michael Hooke, Sr. and Marguerite E. Hooke, Trustees . . . . " The summons did not notify the trustee defendants of any judgment against them. The summons purported to notify the Hookes only that Equitable had obtained a judgment against them individually and not in any representative capacity.

Equitable invokes the second sentence of Md. Rule 625 a claiming that the failure of the Hookes to respond within 30 days after service of the summons upon them resulted in a final enrolled judgment against them as trustees, that the court's revisory power and control over the judgment could then only be exercised "in case of fraud, mistake, or irregularity", and that neither fraud, mistake or irregularity

had been shown.[3] In our view, that portion of Rule 625a is not applicable to this case, presupposing as it does the existence of a final enrolled judgment. Under Rule 645, dealing with judgments by confession, the judgment does not become a final enrolled judgment against a party defendant until 30 days after that party has been properly summoned and has failed to move within those 30 days to have the judgment vacated, opened or modified. The defendant, of course, does not have to wait until he receives a proper summons before filing the motion.

In *Gay Investment Co. v. Angster*, 231 Md. 323 (1963), the Court pointed out the necessity of strictly following the Maryland Rules regarding notice in confessed judgment cases — even where the defendant may have actual knowledge of the judgment.[4] The Court said at 322:

> "In *Suydam v. Bank of Silver Spring*, 233 F. 2d 21 (D.C.), where the record did not show that the judgment debtor had been served with summons as required by the General Rules of Practice and Procedure of Maryland, Pt. Three, II, Rule 1 (a, c, g), the predecessor of present Rule 645, the United States Court of Appeals, District of Columbia Circuit, held that the action of the Circuit Court of Montgomery County in granting plaintiff's motion for summary judgment on a confessed judgment note was in error. (The plaintiff was a Maryland corporation and the defendants were nonresidents of the State.) *The United States Court stated that no judgment against the defendants could be said to be final until the Maryland General Rules of*

---

3. Rule 625a provides:

"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

4. The appellee claims it told Mr. Hooke it had obtained a judgment against him as trustee. Mr. Hooke denied this, claiming that he only learned the judgment was against him as trustee when he attempted to refinance a mortgage loan against some of the trust property.

> *Practice and Procedure had been fully complied with in regard to service of process.* In the instant case, the record shows that although the summons had been issued, it was returned *non sunt* as to all three makers of the note, including appellee. Appellant contends that even though this is so, appellee had actual knowledge of the judgment, and that this is sufficient to satisfy the requirement of notice to the judgment debtor." (Emphasis supplied).

The Court went on to hold that even though the defendant may have had actual knowledge of the judgment, it was not "a final and enrolled judgment" because "the procedure required by Rule 645 was not gratified". *Id.* at 322-323.

Equitable's reliance on *Temple Hill Baptist Church, Inc. v. Dobson*, 259 Md. 515 (1970) is misplaced. The plaintiff in that case was an attorney who had obtained a judgment against Doctor William B. Adams (Adams) for his attorney's fee for representing Adams in a dispute with the federal government. In order to collect the judgment, the plaintiff brought an attachment action against a church of which Adams was the pastor and a member of the Board of Trustees of the church. According to the sheriff's return the writ of attachment was "laid in the hands of [the church] Garnishee and Garnishee [was] summoned by service on William B. Adams, Pastor, this 28th day of February, 1968". When neither the church nor Adams filed any responsive pleading within the time required, the plaintiff obtained a judgment by default and subsequently a judgment of condemnation absolute against the garnishee church. More than 30 days later, the garnishee church sought to set aside the judgment against it on the ground that Adams had failed to notify the church of the attachment proceeding and that service was actually made upon Adams individually and that there was nothing in the writ "to notify the church or to notify ... Adams that he received service in his capacity as Trustee for the church rather than as the individual judgment debtor" of the plaintiff. Adams testified at the hearing that he did not send his then attorney the writ

of attachment served on him because he thought it was intended for him personally and not for the church. The Court held, however, that the hearing judge (The Honorable Irving A. Levine, now Associate Judge of the Court of Appeals) was not in error in his ruling that Adams, as pastor and trustee for the church, was a proper person to be served with process so as to constitute notice to the church and, more importantly, that the writ of attachment served on Adams contained language that "could reasonably be understood" as "being directed to someone other than" Adams.

In the case before us, the summons served upon the Hookes did not contain the slightest clue that Equitable had obtained a judgment against them in their capacity as trustees. It could reasonably be understood to be directed to them only in their individual capacities.

Since Equitable elected to sue the Hookes only in their capacities as trustees, the actual defendants in the suit were never served and the requirements of Rule 645 were not satisfied. *See Bank of America National Trust & Savings Association v. Carr*, 292 P. 2d 587 (Calif. 1956), where the California Court of Appeals made it clear that a party must be served in that legal capacity in which he is sought to be bound. We adhere to that principle. Thus, at the time the trustees filed their petition the judgment against them was not a final enrolled judgment and the second sentence of Rule 625 a with its stringent requirements of a showing of fraud, mistake or irregularity is not applicable. Rather, it was only necessary that they meet the more liberal requirements of Rule 645 c and 645 d.[5] We hold that the

---

**5.** "Rule 645. Judgment by Confession

- - -

"c. Application by Defendant.

Application to vacate, open or modify the judgment must be made by motion within 30 days after service of the summons. The motion shall be made on the ground that the defendant has a meritorious defense to the cause of action. It shall set forth fully the facts relied on for such defense. A copy of the motion shall be served on the plaintiff or his attorney. If no application is made within the time allowed, the judgment shall stand to the same extent as a judgment absolute entered after trial.

Hookes have fully met those requirements. Their petition clearly set forth facts indicating a meritorious defense to the judgment against them in their capacities as trustees insofar as the corporate note is concerned. At the very least, the evidence presented at the hearing established "that there are substantial and sufficient grounds for an actual controversy as to the merits of the case" regarding their alleged liability *as trustees* for the payment of that note. Therefore, it was the duty of the court to vacate that portion of the judgment resulting from non-payment of the corporate note, with leave to the Hookes as trustees to file a responsive pleading to the declaration with respect thereto. As the defendants set forth no facts indicating a meritorious defense to the alleged non-payment of the trustee note, the order of the hearing judge, *pro tanto*, is affirmed. In summary, we hold that as to $51,103.46 of the total judgment entered against the appellants (plus one-half of the court costs below and a counsel fee of $7,500.00), the order of the court denying the petition to set aside the judgment is affirmed. As to the remainder of the total judgment the order is reversed and the case remanded for further proceedings not inconsistent with this opinion.

> *Order affirmed in part and reversed in part; case remanded for further proceedings not inconsistent with this opinion; costs of this appeal to be paid by appellee.*

---

"d. Disposition of Application.

The motion shall be heard promptly by the court. If the evidence presented at the hearing establishes that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the court shall order the judgment by confession vacated, opened or modified with leave to the defendant to file a pleading and the case shall stand for trial. If the evidence does not establish that there are substantial and sufficient grounds for actual controversy as to the merits of the case, the judgment shall stand to the same extent as a judgment absolute entered after trial."